**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-21097-KMM-ELFENBEIN**

REPUBLIC OF PANAMA,          )

            *Petitioner,*          )

         v.          )

OMEGA ENGINEERING LLC and          )
OSCAR RIVERA,

            *Respondents.*          )

     )

**RENEWED MOTION FOR JUDGMENT ON PETITION TO RECOGNIZE AND
ENFORCE ICSID AWARD AND INCORPORATED MEMORANDUM OF LAW**

The Republic of Panama ("Panama" or "Petitioner"), through undersigned counsel and pursuant to Fed. R. Civ. P. 12(c), moves the Court for an order granting its "Petition to Recognize and Enforce ICSID Award" (hereinafter, "Petition") and entering judgment in Panama's favor as outlined in the Petition.  In support of this renewed Motion for Judgment on the Pleadings ("Motion"), Panama states as follows.

On March 21, 2024, Panama filed its Petition, seeking enforcement of the Award it won in the ICSID case brought against it by Respondents.  D.E. No. 1.  On September 27, 2024, Omega Engineering LLC ("Omega") and Oscar Rivera ("Rivera," and with Omega, "Respondents") filed a "First Amended Answer, Affirmative Defenses, and Counterclaims" ("Amended Answer") in response to the Petition. D.E. No. 61.

The Amended Answer provides no grounds to deny enforcement of the Award. Respondents ignore the summary nature of ICSID award enforcement proceedings and have presented "affirmative defenses" that fall far outside the limited grounds available to the Court to deny the enforcement of such an award.  Even if Respondents' affirmative defenses were appropriate in this proceeding, each affirmative defense fails *prima facie* as they are premised on either an unexecuted and unenforceable settlement agreement between the Parties, or proceedings in Panama in which Respondents and the Panamanian Ministry of Health are attempting to settle claims brought by Respondents in an ICC arbitration.  Judgment on Panama's Petition is now appropriate.

## FACTUAL BACKGROUND

### A.    THE ICSID AWARD WAS ISSUED IN PANAMA'S FAVOR

As detailed in Panama's Petition and its Memorandum of Law in Support of its Petition, Respondents commenced a treaty-based investor-state arbitration against Panama, heard before an

experienced arbitral tribunal[1] convened pursuant to the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States ("ICSID Convention" or the "Convention").[2]  In that arbitration, Respondents alleged that Panama breached its international law obligations under two treaties to which it is a party with the United States, and sought damages with respect to multiple construction projects it had undertaken for the Panamanian government.[3]

All of Respondents' claims were unanimously denied by the Tribunal on the merits.[4]  The Tribunal examined the four heads of claim asserted by Respondents (expropriation; breach of the fair and equitable treatment obligation; breach of full protection and security; and breach of the umbrella clause) and held for each that Respondents failed to show that Panama's actions were

---

[1]     *See* Petition to Recognize and Enforce ICSID Arbitration Award (D.E. No. 1), ¶¶ 11-12; Memorandum of Law in Support of Panama's Petition to Recognize and Enforce ICSID Arbitration Award (D.E. No. 1-4), pages 2-3.  The tribunal members are all extremely experienced ICSID arbitrators; as to Professor Zachary Douglas, *see*  https://3vb.com/barrister/prof-zachary-douglas-kc/ (last accessed Oct. 8, 2024); as to Professor Horacio Grigera Naon, https://icsid.worldbank.org/sites/default/files/arbitrators/2021-03/CV_Grigera%20N..pdf (last accessed Oct. 8, 2024); as to Laurence Shore, *see* https://siac.org.sg/wp-content/uploads/2022/07/Laurence-Shore_Profile_Jan2020.pdf (last accessed Oct. 8, 2024).

[2]     Convention on the Settlement of Investment Disputes Between States and Nationals of Other States.  Mar. 18. 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (entered into force Oct. 14, 1966).

[3]     *See* Award (D.E. No. 1-3), ¶¶ 128-164.

[4]     *See id.* ¶¶ 371-376.

taken in its sovereign capacity.[5]   The tribunal subsequently confirmed that these were "liability" decisions on the merits rather than jurisdictional decisions.[6]

Having denied all of Respondent's claims, the Tribunal awarded Panama US$ 4.8 million, representing a substantial portion of the fees and costs incurred by Panama in the arbitration.[7]   The Respondents admit that they have not honored the Award and that they have paid Panama nothing.[8]

## B.   THERE HAS BEEN NO SETTLEMENT

After the Award was issued, Respondents approached Panama to discuss a settlement of Panama's fee award.[9]   Respondents now allege that a settlement agreement was fully executed with Panama, pursuant to which their obligation to pay Panama the US$ 4.8 million was excused.[10] That is false; while there was discussion among counsel and drafts of an agreement exchanged, no settlement agreement was ever signed and multiple Panamanian law pre-conditions to the consummation of a settlement with the Government of Panama were never satisfied.

Despite this issue being raised in Panama's initial Motion for Judgment (D.E. No. 25), Motion to Dismiss (D.E. No. 26), and briefing on Respondents' Motion to Amend (D.E. No. 27)

---

[5]     *See id.* ¶¶ 389, 395, 400, 403.

[6]     *See id.* ¶ 405 (denying Respondents' claim for economic and moral damages "[i]n view of the Tribunal's liability determinations, set out above, by which the Claimants have failed to demonstrate a breach of the" relevant treaties.)

[7]     *See id.*  ¶ 426.

[8]     *See* Amended Answer (D.E. No. 61), ¶ 3 (page 2) ("Respondents admit … that Respondents have not paid the Final Award.").

[9]     *See id.* ¶ 17 (page 16).

[10]    *See id.* ¶ 8 (page 2).

and Panama's Motion to Stay Discovery (D.E. No. 47), Respondents have provided no evidence to support their assertion that a settlement agreement was effected between the parties; they tender no document and are evasive as to whether there is a signed agreement;[11] they do not specify the date of the supposed settlement; they do not quote from or describe the terms of the settlement; they offer no testimony; and they nowhere identify who negotiated the supposed settlement for Respondents or for Panama.

Respondents' evasions are not surprising. Panamanian law has very explicit and demanding requirements for the consummation of an effective settlement agreement with the government. As set forth in the declaration of Panamanian law expert Diego Herrera Dutari, attached hereto as **Exhibit A** ("Herrera Dutari Decl. 1"), a settlement with the government requires, at a minimum, the following steps:[12]

   a.    there must be an executed agreement;

   b.    that agreement must then be approved by:

   - The specific ministries or agencies involved in the matter being resolved, which here included the Ministry of Health (referred to in Panama as "MINSA");

---

[11]    While Respondents in their Amended Answer frequently refer to a settlement, they are careful not to describe its supposed form or to quote its terms. *See, e.g., id.* ¶¶ 8 (page 2), 17 (page 3), 1 (page 4), 4 (page 5), 13 (page 8), *et seq.* However, in one spot Respondents do allege it to be "evidenced by the formal settlement agreement underline executed by both parties…." *Id.* ¶ 7 (page 6) (emphasis added). Of course, it is not annexed and never quoted. Panama denies entering into, much less executing, any such agreement.

[12]    Herrera Dutari Decl. 1 (D.E. No. 66-1), **Exhibit A**, dated June 13, 2024, ¶¶ 5-11.

- The Ministry of Economy and Finance (referred to in Panama as the "MEF");

- The Attorney General;

- The President and Cabinet Council of Panama; and

- The Comptroller General.

c.    The Resolution of the President and Cabinet Council must then be published in Panama's Official Gazette.

None of those requirements were met.  In fact, outside counsel for Panama clearly informed Respondents' counsel that the draft settlement agreement would need to go through this formal approval process.  On January 6, 2023, counsel for Panama sent Respondents an updated draft of the settlement agreement and, in a covering email, expressly stated:

> Please let us know by the end of the day on Monday if this is all now fine with the [Respondents], **as we'd like to start the process for getting formal approvals from within the government.**"[13]

However, no formals approvals were ever obtained, and there can be no doubt that Respondents know that no settlement was concluded.

## PROCEDURAL HISTORY AND STANDARD OF REVIEW

### A.    THE ENFORCEMENT OF ICSID AWARDS IS GOVERNED BY THE ICSID CONVENTION AND 22 U.S.C. § 1650A

Article 53 of that Convention states that ICSID awards "shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention."[14]  To this end, Article 54 states that "[e]ach Contracting State shall recognize an

---

[13]    *See* Email from H. Weisburg to R. Ampudia, attaching draft Settlement Agreement (in English and Spanish), dated January 6, 2023, (D.E. No. 66-2), **Exhibit B** (emphasis added).

[14]    ICSID Convention, Art. 53(1); 22 U.S.C. § 1650a.

award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed within its territories as if it were a final judgment of a court in that State."[15]

The United States Congress enacted 22 U.S.C. § 1650a as the enabling legislation for the ICSID Convention.  Pursuant to Section 1650a, ICSID awards "create a right arising under a treaty of the United States" and "the pecuniary obligations imposed by such award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States."[16]  Section 1650a further makes clear that the Federal Arbitration Act does not apply and, as such, the discretionary grounds for refusing to enforce an award incorporated into that statute are not applicable.[17]

The mandatory language used in the ICSID Convention and Section 1650a, and the unavailability of the discretionary grounds for refusing to enforce an arbitration award set out in the Federal Arbitration Act, means that the Court's discretion to refuse to enforce an authentic ICSID award is extremely limited.[18]  As this Court has previously held, its inquiry in an ICSID enforcement action is limited to determining whether the court has "subject-matter jurisdiction and personal jurisdiction" and "its enforcement order is consistent with the award."[19]  Additionally, the Court may decline to enforce an ICSID award if the party opposing enforcement demonstrates

---

[15]    *Id.*, Art. 54(1).

[16]    22 U.S.C. § 1650a.

[17]    *See id.*

[18]    *See Oriental Republic of Uruguay v. Italba Corp.*, 606 F. Supp. 3d 1250, 1255 (S.D. Fla. 2022).

[19]    *Id.* at 1255 (citing *Teco Guat. Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 101 (D.D.C. 2019)).

that the award was procured through fraud.[20]  Respondents' have raised none of these defenses and none are available.  Setoff is not a generally recognized defense to the enforcement of an ICSID award, as explained in further detail in the Argument Section A(5).

**B.**     **PANAMA COMMENCED A SUMMARY PROCEEDING TO ENFORCE ITS AWARD, AS AUTHORIZED BY 22 U.S.C. § 1650A**

Article 54(2) of the ICSID Convention states that a party "seeking recognition or enforcement in the territories of a Contracting State shall furnish to a competent court or other authority which such State shall have designated for this purpose a copy of the award certified by the Secretary General."[21]  Accordingly, a party seeking to enforce an ICSID award need not commence a lawsuit; rather, enforcement proceedings are summary in nature and require only the submission of a certified copy of the award to be enforced.[22]

Panama complied with its obligations by submitting a petition to confirm and enforce the Award, accompanied by a copy of the Award.  *See* D.E. No. 1.  Respondents do not challenge the validity or authenticity of the Award. [23]  To the contrary, Respondents acknowledge that the "Award speaks for itself" and that they have not complied with their payment obligations thereunder. [24]

---

[20]      *See Teco Guat. Holdings, LLC*, 414 F. Supp. 3d at 103.

[21]      ICSID Convention, Art. 54(2).

[22]      *Oriental Republic of Uruguay*, 606 F. Supp. 3d at 1253-54 (citing *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 100 (2d Cir. 2017)).

[23]      *See* Amended Answer (D.E. No. 61), ¶¶ 2-3 (pages 1-2), 11-18 (pages 3-4), 21 (page 4).

[24]      *See id.* (D.E. No. 61), ¶¶ 2-3, 11-18, 21.

In keeping with the summary nature of the proceedings, the procedure for addressing these petitions is the same as in standard motion practice; the petitioner files an opening petition, the respondent files an opposition, and the petitioner can file a reply.[25]   Despite this established procedure, on September 27, 2024, Respondents filed an amended response to the Petition in a document styled as an "First Amended Answer and Affirmative Defenses" to Panama's petition **and** a "Counterclaim" alleging breach of contract and promissory estoppel by Panama.   The deficiencies of Respondents' amended answer and affirmative defenses are addressed below. Respondents' Amended Counterclaim, which is also based on the false premise that a settlement agreement was concluded between Panama and the Respondents, is discussed in Panama's "Renewed Motion to Dismiss Counterclaim," filed simultaneously herewith.   D.E. No. 67.

### C.   JUDGMENT ON THE PLEADINGS IS AN APPROPRIATE MECHANISM FOR ENFORCING ICSID AWARDS

Courts in this District have previously found that an "action to enforce [an] ICSID Award is plenary" and "judgment on the pleadings is an appropriate method for effectuating the goals of the [ICSID] Convention and the enabling statute."[26]   Judgment on the pleadings may be granted where "a party fails to offer any pertinent defense"[27] and "'where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'"[28]   Here, the relevant facts

---

[25]     *Id.* at 1259.

[26]     *Id.*

[27]     *See id.* at 1258.

[28]     *Spottswood Cos., Inc. v. Zurich Am. Ins. Co.,* No. 20-cv-10077, 2021 WL 2515255, at *3 (S.D. Fla. June 14, 2021) (Moore, J.) (quoting *Cannon v. City of W. Pam Beach,* 250 F.3d 1299, 1301 (11th Cir. 2001)).

are clearly established and nowhere disputed, and Panama's application can be fairly and fully decided in a summary manner.

As discussed below, Respondents have not raised a pertinent defense to enforcement of the ICSID award under Section 1650a and there is no reason why this matter cannot be fully and fairly resolved in a summary manner.

## ARGUMENT

### A.   RESPONDENTS HAVE NOT RAISED VIABLE DEFENSES THAT WOULD PREVENT ENFORCEMENT OF THE AWARD

In deciding whether an ICSID award should be enforced, the Court's inquiry is limited to determining whether it has "subject-matter jurisdiction and personal jurisdiction," that "its enforcement order is consistent with the award,"[29] and that the award was not procured through fraud.[30]  None of those defenses are available here.

### 1.   The Court Has Personal Jurisdiction Over Respondents

Respondents have not challenged the Court's personal jurisdiction in this matter. To the contrary, Respondents "admit" that Mr. Rivera is a resident of Miami, Florida and the owner of Omega, a company incorporated in the Commonwealth of Puerto Rico.[31]  These facts provide the Court personal jurisdiction over Respondents.

---

[29]   *Oriental Republic of Uruguay*, 606 F. Supp. 3d at 1255 (citing *Teco Guat. Holdings, LLC*, 414 F. Supp. at 101).

[30]   *See Teco Guat. Holdings, LLC*, 414 F. Supp. 3d at 103.

[31]   *See* Amended Answer (D.E. No. 61), ¶¶ 1-2 (pages 12).

**2.  The Court Has Subject Matter Jurisdiction Over Panama's Petition**

As Panama stated in its Petition, the Court has subject matter jurisdiction over the Petition pursuant to 28 U.S.C. § 1331, Article 54 of the ICSID Convention, and 22 U.S.C. § 1650a.[32] Respondents do not challenge the applicability of these provisions.  Rather, Respondents solely "deny that this Court has subject matter jurisdiction over the present matter as there exists no live case or controversy" due to the alleged execution of a "binding settlement agreement" in which the Republic of Panama agreed to forego any payment of the Final Award by the ICSID Tribunal in exchange for Respondents" agreement not to pursue certain post-award remedies that Respondents believe are available to them.[33]  Based on this allegation, Respondents asserted six "affirmative defenses," which are premised on the existence of an executed and binding settlement agreement: mootness; release; accord and satisfaction; equitable estoppel; waiver; and unclean hands.[34]  These defenses and Respondents' argument that the Court lacks subject matter jurisdiction fail.

*First*, as explained above and as addressed in Panama's Renewed Motion to Dismiss Respondents' Counterclaims, no valid and enforceable settlement agreement exists between Panama and Respondents.  Respondents' vague and unsupported allegations that such an agreement exists is insufficient to raise a credible question of fact.  As such, Respondents' claim that "no live controversy exists" is without merit.  Similarly, Respondents cannot argue that "the disputes underlying" Panama's Petition were "resolved,"[35] that Panama has "released Respondents

---

[32]    *See* Petition (D.E. No. 1), ¶ 8.

[33]    Amended Answer (D.E. No. 61), ¶ 1 (pages 4-5).

[34]    *See id.* ¶ 1 (page 4) through ¶ 29 (page 12).

[35]    *Id.* ¶ 2 (page 5).

from all liability related to any claims" arising from the Award,[36] that the non-existent settlement agreement "constitutes an accord,"[37] that Panama "waived" its right to enforce the Award, or that Panama acted with "unclean hands" in negotiating a "binding settlement agreement" of the Final Award while also seeking to enforce that Award.[38]

Respondents' equitable estoppel argument equally lacks merit.[39]   According to Respondents, Panama "reached a binding and complete settlement agreement with Respondents" and Respondents "did not pursue their rights under the ICSID Convention" based on that agreement.[40]   This defense is invalid as, again, it is premised upon the false assertion that an executed and appropriately approved settlement agreement exists between the parties.

The equitable estoppel defense also fails as a factual matter.  Respondents argue that they did not pursue the potential post-award remedies of "interpretation, revision, or annulment of the Tribunal's Final Award" because of the execution of the settlement agreement and that the time to pursue these rights "has now expired."[41]  That statement is incorrect.

Article 50 of the ICSID Convention, which governs requests for "interpretation," provides that "if any dispute shall arise between the parties as to the meaning or scope of an award, either party may request interpretation of the award by an application in writing addressed to the Secretary General."  Rule 69(3) of the ICSID Arbitration rules provides that "an application for

---

[36]       *Id.* ¶ 4 (pages 5-6).

[37]       *Id.* ¶ 6 (page 6).

[38]       *Id.* ¶ 13 (page 8).

[39]       *Id.* ¶¶13-15,  21-25 (pages 8-11).

[40]       *Id.* ¶¶ 10-11 (pages 7-8).

[41]       *Id.* ¶ 10 (page 7).

interpretation pursuant to Article 50(1) of the Convention *may be filed at any time after the Award is rendered.*"[42]

Applications for "revision" may be made if a new fact has been discovered that would decisively "affect the award."[43]  Such an application must be made within 90 days after the discovery of the new fact but may be made up three years after the award was issued.  Respondents (who have never identified any such fact), therefore have until October 14, 2025 to file an application for revision.

Applications for "annulment" must be made within 120 days of the award, unless the application is based on the discovery of corruption, in which case the application may be made up to three years after the award is issued.[44]  The grounds for annulment of an ICSID Award are extremely narrow.  Indeed, the only grounds on which an award can be annulled are: (a) if the Tribunal was not properly constituted; (b) the Tribunal manifestly exceeded its powers; (c) there was corruption on the part of a member of the Tribunal; (d) there was a serious departure from a fundamental rule of procedure; or (e) the award failed to state the reasons on which it is based.[45]  Respondents have never suggested that any of these grounds exist.  As such, Respondents' claim that they were prejudiced by not pursing a remedy that was factually and legally unavailable to them is not credible.  Bald assertions of prejudice and forbearance are insufficient to implicate the doctrine of equitable estoppel.

---

[42]     ICSID Arbitration Rules, Rule 69(3) (emphasis added).

[43]     ICSID Convention, Art. 51.

[44]     *Id.*, Art. 52(2).

[45]     *Id.*, Art. 52(1).

*Second*, even if the agreement described by Respondents in their Amended Answer existed, it would not deprive this Court of subject matter jurisdiction over an action to enforce the Award. According to Respondents, Panama allegedly agreed "to forego any payment of the Final Award by the ICSID Tribunal."[46]  An action to recognize and enforce an arbitral award is not the same as an action to execute on a judgment recognizing that award.  Indeed, recognition and enforcement of an arbitral award is a procedural step in which the enforcing court acknowledges the validity of the award and converts it into a judgment.  The judgment creditor must then seek to execute on that judgment in order to obtain payment if the judgment debtor does not voluntarily pay.  This distinction is recognized in the ICSID Convention itself, where Article 54(3) states that "[e]xecution of the award shall be governed by the laws concerning execution of judgment in force in the State in whose territories such execution is sought."[47]  As such, under Respondents' own argument, the alleged settlement agreement would not preclude recognition and enforcement of the Award even if the draft settlement agreement had been fully executed by the parties in accordance with Panamanian law (it was not).

### 3.      The Judgment Sought From this Court is Consistent with the Award

The order and judgment Panama seeks are wholly consistent with the Award.  Panama seeks the recognition of the Award, which dismissed all claims raised by Respondents in the arbitration and sets out Panama's entitlement to recover legal fees and costs.

### 4.      The Award was Certainly not Procured Through Fraud

Respondents have never suggested that the Award was procured through fraud. Respondents fully participated in all aspects of the underlying arbitration and, at no point raised

---

[46]      Amended Answer (D.E. No. 61), ¶ 8 (page 2).

[47]      ICSID Convention, Art. 54(3).

any concerns that the proceedings were improper or that the Award was the product of any type of fraudulent conduct.

### 5. Respondents' Affirmative Defenses Predicated on Ongoing Liquidation Proceedings are Similarly Invalid

In their Amended Answer, Respondents' contend that on or around September 29, 2023, Panama began the process of terminating its contracts with Respondents and, pursuant to Panamanian law, began conducting *liquidación* or "liquidation" proceedings (which Respondents refers to as a "true up") to settle any outstanding amounts owed under three "Construction Contracts."[48]  According to Respondents, this process is ongoing, but "certain documents and correspondence make clear that Panama owes Respondents not less than the principal sum of $US14,000,000.00 plus interest since 2014."[49]  It is on this alleged factual basis, that Respondents raise the affirmative defenses of setoff, unclean hands, and violation of public policy.

However, each affirmative defense fails and should be denied.

*First*, as discussed above, there are limited avenues in which a party may challenge the enforcement of an ICSID Award.[50]  Neither setoff, unclean hands, nor violation of public policy, falls within those limited challenges and therefore, are not cognizable defenses in this proceeding.

*Second*, there are no ongoing liquidation proceedings in Panama on which Respondents' affirmative defenses are based.  According to the declaration of Panamanian law expert, Diego Herrera Dutari, attached hereto as **Exhibit C** ("Herrera Dutari Decl. 2"), "there are no ongoing

---

[48]     Amended Answer (D.E. No. 61), ¶ 17 (page 9).

[49]     *Id.* ¶ 19 (pages 9-10).

[50]     *Oriental Republic of Uruguay*, 606 F. Supp. 3d at 1255 (citing *Teco Guat. Holdings*, 414 F. Supp. 3d at 101).

liquidation proceedings between the Ministry of Health and the Respondents.[51]  As Mr. Herrera explains, there are three types of liquidation proceedings, each of which occurs *prior* to the actual termination of the contract.[52]  Respondents allege that the purported liquidation proceedings are currently underway and are seeking resolution of the Construction Contracts.[53]  However, those contracts were administratively terminated in September 2023.  At that time, no liquidation process was started and no discussions were being held regarding potential debts owed by either party.  Negotiations between Panama and Respondent only began after Respondents initiated their ICC arbitration in May 2024.  Thus, there is no liquidation process, but simply settlement discussions relating to the claims asserted by Respondents against Panama in a separate ICC arbitration.  Accordingly, Respondents' affirmative defenses of setoff, unclean hands, and violation of public policy fall away as they are based on a false premise.

Respondents are aware of these facts.  As part of the parties' ongoing and informal negotiations, Respondents, through their counsel, submitted a proposal to MINSA in a letter dated August 14, 2024, which would allow them to finish the works relating to contracts that were previously terminated.[54]  That proposal was ultimately rejected as not viable in light of the fact that Respondents' contracts were previously terminated, that the contract terms have expired, and

---

[51]     Herrera Dutari Decl. 2 (D.E. No. 66-3), **Exhibit C**, dated July 24, 2024, ¶ 10.

[52]     *Id.* at ¶¶ 6-8.

[53]     Amended Answer, ¶ 18 (page 9),

[54]     Letter from Moreno y Fabrega to MINSA, dated August 14, 2024, **Exhibit D** (D.E. No. 66-4).

that the contracts have already been subject to an ICSID arbitration concerning the parties.[55] However, the Minister of Health noted their willingness to continue negotiations with Respondents.  The letters, however,  do not suggest that any formal process is underway, nor that Panama owes any debt to Respondents for the Construction Contracts.

    *Third*, even if setoff was a valid affirmative defense to the enforcement of an ICSID award,[56] the amount of debt owed by the sovereign to the award debtor must be valid, final, and undisputed.  In *Perenco Ecuador Ltd. v. Republic of Ecuador*, the U.S. District Court for the District of Columbia concluded that the ICSID Convention and its implementing statute "do not permit setoffs in enforcement proceedings if the parties dispute the validity, finality, or amount of one side of the transaction."[57]  The court further concluded that, "[w]hether a setoff represents a substantive challenge to an award – and is therefore beyond the reach of a court enforcing an ICSID award – depends on whether the parties dispute the proposed offsetting debt.  Courts would breach their obligation to enforce ICSID awards if they entertained setoffs where there were genuine questions as to the validity, finality, or amount of the underlying debt."[58]

    On Respondents' own case, the alleged debt is neither valid, final, nor undisputed.  The

---

[55]    Letter from MINSA to Morena y Fabrega, dated August 21, 2024, **Exhibit E** (D.E. No. 66-5).

[56]    *Mobil Cerro Negro, Ltd.*, 863 F.3d at 121 (stating in dicta that "non-merits challenges" such as an "offset," "might" apply to the award that would make execution in the full amount improper").

[57]    *Perenco Ecuador Ltd. v. Republic of Ecuador*, No. 19-CV-2943 (JMC), 2023 WL 2536368, at *5 (D.D.C. Mar. 16, 2023) (emphasis added).

[58]    *Id.* at *6.

16

question of whether Panama owes any money to Respondents is the subject of an ongoing ICC commercial arbitration initiated by Respondents involving three contracts entered into by Respondents and Panama's Ministry of Health.   Any negotiations or discussions engaged in between the parties to settle this alleged debt – whether under the guise of liquidation proceedings or otherwise – is not final nor unsettled.   Respondents claim that the parties are "currently engaged" in such proceedings to settle the dispute and certain undisclosed documents support that "*not less than* the principal sum of $US14,000,000.00 plus interest" is owed.[59]  This certainly does rise to the level of a "final" and "undisputed" amount required for setoff.  At best, this is an ongoing process to resolve whether a still undetermined amount (if anything) is due to Respondents.

*Fourth*, Respondents state that it is against public policy to compel Respondents to pay the amount awarded in the ICSID Final Award where Petitioner allegedly owes Respondents a significantly larger amount under the Construction Contracts which is "currently subject to a true-up or liquidation process."[60]  However, the public policy defense is not available in actions to enforce an ICSID Award.  Section 1650(a) expressly states that "[t]he Federal Arbitration Act (9 U.S.C. 1 *et seq.*) shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention."[61]  Congress, therefore, expressly excluded the defenses to enforcement found in the FAA and the New York Convention in actions to enforce ICSID Awards.  Courts similarly have held that public policy defenses are unavailable in ICSID enforcement proceedings.  In *Valores Mundiales S.L. v. Bolivarian Republic of Venezuela*, the D.C. Circuit rejected a public policy

---

[59]      Amended Answer (D.E. No. 61), ¶ 19 (page 9), ¶ 20 (page 10) (emphasis added).

[60]      *Id.* at ¶ 27 (page 11).

[61]      22 U.S.C. § 1650a.

defense, holding that there is no "roving public policy exception to the full faith and credit due to judgments" and, by extension under Section 1650a, ICISD Awards.[62]

Even if violation of public policy were available as a defense to ICSID awards, U.S. courts have held that this standard is "high, and infrequently met"[63] and that standard cannot be reached here.  It is not against public policy to enforce an award that was the result of a dispute resolution process agreed to by the parties.  Moreover, the factual premise for Respondents' argument is false.  Respondents' position assumes that there is a fixed liability owed by Panama to Respondents.  As discussed above, that is not the case.  The question of whether Panama owes any money to Respondents – and if so, how much – is the subject of an ongoing arbitration and negotiations between the parties.  Even if it were finally determined that Panama owes money to Respondents, it still would not violate public policy to enforce the ICSID Award issued in Panama's favor.  At worst, Respondents would be required to pay the amount owed under the ICSID Award and, in return, would receive the full amount found or agreed to be owed by Panama.  As such, enforcing the ICSID award issued in Panama's favor would not violate the public policy of the United States.

## CONCLUSION AND REQUEST FOR RELIEF

Panama has filed the appropriate petition to enforce a valid and authentic ICSID award. Respondents have no defense to the enforcement of that Award.  Instead, Respondents have raised

---

[62]    87 F.4th 510, 519-20 (D.C. Cir. 2023) (citing *Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 232-33 (1998).

[63]    *Corporación Mexicana de Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 106 (2d Cir. 2016).

wholly unsupported allegations about a non-existent settlement agreement and purported liquidation proceedings, all to delay and frustrate these proceedings.  Further, Panama reserves the right to seek its attorneys' fees and costs incurred in responding to Respondents' Amended Answer as a sanction against Respondents for filing this frivolous pleading and pursuing wanton and vexatious litigation.  Respondents have failed to raise viable defenses to enforcement of the Award and those defenses that have been raised fall far outside the scope of the Court's permissible review in an ICSID award enforcement action.  As such, Respondents should be sanctioned and required to pay Panama's fees and costs in this matter, as shall be more fully briefed in a separate motion for fees after entry of judgment in Panama's favor.

Under these circumstances, Respondents request a judgment and order:

1. Granting Panama's Petition;

2. Denying Respondents' Affirmative Defenses;

3. Granting Panama's entitlement to its reasonable attorney's fees and costs incurred in relation to this enforcement action, including the instant Motion; and

4. Any other relief that the Court deems appropriate.

Dated:  October 11, 2024                    Respectfully submitted,

                                            **HOGAN LOVELLS US LLP**
                                            600 Brickell Avenue
                                            Suite 2700
                                            Miami, Florida 33131
                                            Telephone:  (305) 459-6500
                                            Facsimile:  (305) 459-6550

                                            By:*/s/ Hans H. Hertell*
                                            Richard C. Lorenzo
                                            Florida Bar No. 071412
                                            richard.lorenzo@hoganlovells.com
                                            Hans H. Hertell
                                            Florida Bar No. 071969
                                            hans.hertell@hoganlovells.com

                                            **ALLEN OVERY SHEARMAN
                                            STERLING US LLP**

                                            Christopher M. Ryan (*admitted pro hac
                                            vice*)
                                            401 9th Street, NW
                                            Washington, DC 20004
                                            (202) 508-8000

                                            *Counsel for Petitioner*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2024, the foregoing was filed with the Clerk of Court using CM/ECF, which will serve a Notice of Electronic Filing on all counsel of record.

By: */s/ Hans H. Hertell*
    Hans H. Hertell